CORINGA, The. See Case No. 1,736.

CORIOLANUS, The (JOHNSON v.). See Case No. 7,380.

# Case No. 3,231.
## CORKLE v. MAXWELL.
### [3 Blatchf. 413.][1]

Circuit Court, S. D. New York. Jan. 23, 1856.

VOLUNTARY PAYMENT—EXACTION OF IMPORTER—STORAGE OF GOODS.

1. A payment voluntarily made cannot be recovered back, even though it could not have been enforced by law.

2. When a payment has been obtained by fraud, oppression or extortion, or when it has been made to secure a right which the party paying was entitled to without such payment, and which right was withheld by the party receiving the payment until such payment was made, such payment was not voluntary, and may be recovered back.

3. It may also be recovered back when it was made upon a wrongful demand, to save the party paying from some great or irreparable mischief or damage, from which he could not be saved but by the payment of the sum wrongfully demanded.

4. A person who has his private warehouse, designated by the secretary of the treasury as a place for the storage of dutiable merchandise, under the act of August 6, 1846 (9 Stat. 53), and who, on being required by the government, before the depositing of any goods in his store, to elect to pay to the collector either the salary of an inspector, or one-half of the accruing storage at public store rates, elects the former, and makes payments thereunder, which are paid into the treasury, cannot recover them back. And this is so, even though the government had no legal right to demand the payments.

[Followed in Harriman v. Maxwell, Case No. 6,105.]

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

5. Under the said act of August 6, 1846, no person has any right to keep a warehouse for the storage of dutiable goods, unless appointed by the secretary of the treasury; and such appointment can be revoked at pleasure.

6. Under the said act of August 6, 1846, the government has a right to require the person whose warehouse is designated as a place for the storage of dutiable merchandise, to pay the salary of an inspector to superintend the receipt and delivery of goods from the warehouse.

This was an action at law against [Hugh Maxwell] the collector of the port of New York, to recover back certain sums of money paid by the plaintiff [John Corkle] and one Jackson jointly, to the defendant as such collector. The suit was originally brought in the supreme court of New York, and was removed into this court by the defendant. Before the commencement of the suit, Jackson assigned all his interest in the claim to the plaintiff, and the suit was, under the laws of New York, brought in the name of the plaintiff, without joining Jackson as a party.

John S. McCulloh for plaintiff.

J. Prescott Hall, for defendant.

INGERSOLL, District Judge. Early in the year 1849, the plaintiff and Jackson, being desirous to engage in the business of storing dutiable merchandise, under the warehouse act of August 6th, 1846 (9 Stat. 53), made application to the secretary of the treasury to have the store No. 71 Greenwich street, in the city of New York, occupied by them, designated for that purpose. Upon such application, it was so designated, and, on the 14th of March, 1849, the plaintiff and Jackson entered into a bond to indemnify the government, the collector of the port, and all other officers of the customs, for any loss or damage which might happen to any goods which might be stored in such warehouse under the act. The secretary of the treasury, by his circular of February 17th, 1849, gave his instructions to all collectors, and other officers of the customs, by which the occupants or owners of all warehouses of a kind with that at No. 71 Greenwich street, were required to pay monthly to the collector a sum equivalent to the salary of an inspector, or, at their option, to pay monthly to the collector one half storage, at the rates charged in stores owned by the United States, or leased by them; and this election was to be determined before any goods were placed in the store. On the 14th of March, 1849, Jackson & Corkle were required, by the warehouse superintendent, to notify the collector, in writing, whether they would pay, for the use of the inspector required at their warehouse, the sum of $1,095 per annum, payable monthly, or one half of the amount of storage accruing on goods in their warehouse, at public store rates. On the same day, Jackson replied thus to the letter of the warehouse superintendent: "I beg to inform you that, having the option of choosing, I adopt that mode of paying the inspector's salary, of three dollars per day."

During the collectorship of Cornelius W. Lawrence, to wit, up to the 1st of July, 1849, Jackson & Corkle paid to him, for the use of the United States, three dollars a day, monthly, towards an inspector's salary, for his services at their warehouse; and, during the collectorship of the defendant, to wit, from the 1st of July, 1849, to the 1st of May, 1852, they paid to him, for the like services, the like sum of three dollars a day, at the end of each month. These several payments were handed over to the treasury of the United States. When the payment for September, 1849, was made, it was made under protest, the plaintiff claiming, in the protest, that the services of an inspector were of no value to him, by reason of an order prohibiting the receipt of bonded goods at his warehouse, and also that the demand was contrary to the act of August 6th, 1846. When the payment for November, 1851, was made, it was made under the following protest, dated December 1st, 1851, addressed to the defendant: "You are hereby requested to take notice that we make the payment of this month's half storage (as inspector's salary) for the use of our private bonded warehouse, number 71 Greenwich street, under protest, claiming that you and the government have no right to collect said exactions; that they are not a proper demand against us, under any law of the United States; that the rent and labor of said warehouse is paid by us alone; that inspector's salaries are properly and solely chargeable on the general revenue, and not on us, the owners of private bonded warehouses; and that our agreement heretofore made with you, to pay half storage or inspector's salary, was compulsorily and illegally exacted from and imposed on us by you, under color of your office, as a condition of our enjoying the rights secured to us under the warehousing laws of the United States. We extend this protest to the present and all past and future similar exactions from us, and shall hold you and the government responsible for them in damages, and submit to such exactions temporarily, only to continue in the use of said warehouse. Jackson & Corkle." This suit is brought to recover back the several sums so paid.

The plaintiff grounds his right of recovery upon his establishing two propositions—First, that there was no law authorizing the government, through its agent, the defendant, to demand the payments which Jackson & Corkle made to the defendant; and, second, that such payments were not voluntary, but were made under such coercion that they can be recovered back. It is admitted by the plaintiff, that if he fails in establishing either of these propositions, he must fail in this suit. I will consider these two propositions in their reversed order.

Jackson & Corkle had no right to keep a

warehouse for the receipt and storage of dutiable goods, by any of the provisions of the act of August 6th, 1846, or by any provision of any other act of congress. Whatever right they had to keep a warehouse, was by virtue of an appointment from the secretary of the treasury. That appointment was subject to the will of the secretary. It is for no determinate time. The appointment could be revoked at pleasure, without violating any of their rights. It was subject to the will of the secretary. They had no right to continue to act as warehouse-keepers for the United States for any definite period of time. What they had was only a privilege conferred upon them by the secretary of the treasury, and which was to continue so long as he willed it should continue.

In considering the question, whether the payments made by Jackson & Corkle to the defendant were voluntary or not, or whether they were made under such coercion that they can be recovered back, it will be assumed, for the purposes of the argument, that neither the government nor the defendant had any legal right to demand the sums which were paid. But it is not every payment upon a demand which could not be enforced by law, that can be recovered back. If it was freely and voluntarily made, there can be no recovery back. But, when the payment has been obtained by fraud, or by oppression or extortion, or when it has been made to secure a right which the party paying was entitled to without such payment, and which right was withheld by the party receiving the payment until such payment was made, such payment was not voluntary, and the money can be recovered back. And it may be said, that where the money was paid upon a wrongful demand, to save the party paying from some great or irreparable mischief or damage, from which he could not be saved but by the payment of the sum wrongfully demanded, it can be recovered back. In the case in question, there was no fraud practised by the defendant upon the plaintiff, or upon Jackson. The defendant received the money honestly, and in obedience to instructions from the secretary of the treasury, and paid the same over to the treasury. No fraud can be imputed to the defendant.

But it is said by the plaintiff, that the payments were made by him and Jackson for the purpose of protecting themselves in the right which they had to use, at a time future to the payments, the store No. 71 Greenwich street, as a warehouse for dutiable goods; that they had such right without such payments; and that they made them in order that they might continue in the use of said warehouse. It has already been shown that Jackson & Corkle, at the time the payments were made, had no right to the future use of their store as a warehouse, and that they had only a privilege so to use it, so long as the secretary of the treasury

willed that they should so use it. The payments were not made to secure them in a right which by law they were entitled to. This case is different from the cases which have been referred to, where an importer has been held to have a right to recover back from the collector an excess of duties which the collector has exacted. In such a case, the importer has a right (not merely a privilege) to have his goods imported upon the payment of the duties which the law imposes. And, if the collector demands a greater duty than is imposed by law, and refuses to give up the goods to the importer upon the payment of the legal duties, and will give them up only upon the payment, not only of the legal duties, but of the illegal excess, and the importer, in order to secure his right to the possession of the goods, pays the illegal excess, he can recover back such illegal excess, when a proper protest is made. Such a payment is not a voluntary payment. It is made to protect himself in his right to the goods, which he was entitled to, by law, without the payment of such excess. But Jackson & Corkle had no right, by law, to the future use of their store as a warehouse for dutiable goods. The payments made by them were, therefore, not obtained by fraud or oppression or extortion, nor were they made to secure themselves in a right that was unjustly withheld from them. Therefore, they cannot be recovered back, even though the government, through its agent, the defendant, had no legal right to demand them. The payments were, in contemplation of law, voluntary, and not made under coercion.

But I am of opinion, that the claim which the defendant, as the agent of the government, made upon Jackson & Corkle, and which they paid, was a claim authorized by law. The intent of the act of August 6th, 1846, was, that the duties on all imported goods should be paid in cash, at the time of the importation. It provided, however, that if the duties were not so paid, the goods should be taken possession of by the collector, and be deposited in a public store or other store for receiving dutiable goods, and that they might there be kept, without the payment of duties, for the space of one year, at the charge and risk of the importer, and not at the charge or risk of the United States. No expense or charge was to accrue to the United States, in consequence of the neglect of the importer to pay the duties and take the goods at the time of the importation. If they remained in store beyond one year, without the payment of the duties and charges thereon, they could be sold by the collector, and the proceeds of the sale, after deducting "the usual rate of storage," "with all other charges and expenses, including duties," were to be paid over to the importer. If, at any time within the year, the goods should be entered for re-exportation, the collector was required, upon the payment of the appropri-

ate expenses, to permit the goods to be shipped without the payment of any duties. In no event were the United States to be at any charge or expense for storing.

The store of Jackson & Corkle was authorized by the secretary of the treasury to be used by them as a private warehouse for the storage of dutiable goods. They were to receive the prices of storage for all goods stored in their warehouse. In this way they were to be benefited. They were to be at all the expenses and charges of having their store placed in a proper condition to be used as a warehouse for the storage of dutiable goods. To be placed in such proper condition, it was not only necessary that the building should be of a proper construction, with proper fixtures, but, also, that it should have attendants, to keep the goods safely for the purposes for which they should be stored. It would not be in a proper condition for a warehouse without an inspector, to guard and watch the goods while deposited in the building, and to superintend their receipt into and delivery from it. As, therefore, it was necessary there should be an inspector, to make the building a proper warehouse, and, as Jackson & Corkle were, at their own expense, to do everything to have the building in a proper condition to be used as a warehouse for dutiable goods, it was right they should bear the expense of such inspector. That would be carrying out the intent of the act of August 6th, 1846, which was, that no expense should accrue to the United States in consequence of the neglect of the importer to pay the duties and take the goods at the time of the importation. If the goods had been stored in a public warehouse, the United States would have been reimbursed for that expense, by proper charges against the goods for storage. And the arrangement made between the secretary of the treasury and Jackson & Corkle, was a proper one to free the United States from the charges of storing the goods in a private warehouse.

It is said by the plaintiff, that the whole amount paid for the inspector's salary was not, in fact, paid over to the inspector, and that, at all events, for the amount thus not paid over, a recovery can be had. However the fact may be, for the reasons suggested upon the point first considered, no recovery can be had.

Judgment for defendant.